# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EMMANUEL A. KORNYO,<br><br>　　　　Plaintiff<br><br>　　v.<br><br>GONZAGA COLLEGE HIGH SCHOOL,<br><br>　　　　Defendant | Civil Action No. 17-1061 (CKK) |

## MEMORANDUM OPINION
(April 5, 2018)

This case arises from the decision of Defendant Gonzaga College High School ("Gonzaga") to terminate the employment of one of its ethics and philosophy teachers, Plaintiff Emmanuel A. Kornyo. Plaintiff is black and a native of Ghana. During his tenure at Gonzaga, Plaintiff was in the United States on an H-1B visa. Plaintiff alleges that Gonzaga discriminated against him on the basis of his race and national origin. Now before the Court is Defendant's [8] Motion to Dismiss. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as it currently stands, the Court will GRANT Defendant's motion.

## I. BACKGROUND

For the purposes of the motion before it, the Court accepts as true the well-pleaded allegations in Plaintiff's Amended Complaint. The Court does "not accept as true, however, the

---

[1] The Court's consideration has focused on the following documents:
- Def.'s Mot. to Dismiss, ECF No. 8 ("Def.'s Mot.");
- Pl.'s Opp'n to Def.'s Mot. to Dismiss, ECF No. 11 ("Pl.'s Opp'n); and
- Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss, ECF No. 12 ("Def.'s Reply").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

1

plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014).

According to the Amended Complaint, Gonzaga hired Plaintiff as a teacher of ethics and philosophy in September 2006. Am. Compl., ECF No. 7, ¶ 7. Plaintiff is black and a native of Ghana. *Id.* ¶ 5. During the interview process leading up to his hiring, Plaintiff alleges that he informed Defendant that he was in the United States on a student visa with a work permit. *Id.* ¶ 9. According to Plaintiff, Defendant told him that due to Plaintiff's prior experience teaching and in the Seminary, Defendant was willing, contingent on Plaintiff's performance, to sponsor his application for a work visa or a green card. *Id.* ¶¶ 10-11. Plaintiff alleges that, based on his good work, the Headmaster at Gonzaga eventually agreed to sponsor his application for an H-1B visa. *Id.* ¶ 19. Plaintiff's visa application was approved. *Id.* ¶ 22. Plaintiff then began the process of applying for a green card. *Id.* ¶¶ 23-25. He requested assistance in that process (including the completion of a "labor certification") from the Headmaster, who took his request under advisement. *Id.* ¶¶ 25-26.

Later, Plaintiff participated in a skit about the Headmaster at a school retreat. *Id.* ¶¶ 27-29. The skit allegedly portrayed the Headmaster holding an umbrella and saying "good morning." *Id.* ¶ 29. Plaintiff alleges that, after the skit was over, the Headmaster confronted him and said "why did you do a skit about me? It was very offensive, it should never be done, and is not acceptable." *Id.* ¶ 30. Plaintiff apologized, but feared retaliation. *Id.* ¶¶ 30-32.

Plaintiff was subsequently approached about teaching a new course at Gonzaga in Bioethics. *Id.* ¶ 34. In order to prepare to teach this new subject matter, Plaintiff allegedly requested permission to take a course on Biotechnology at Georgetown University, and have Gonzaga reimburse him for the tuition. *Id.* ¶¶ 34-35. Plaintiff alleges that the Headmaster

originally agreed but, after Plaintiff was accepted in the program, retracted his support and informed Plaintiff that the school would not pay for Plaintiff to attend the course. *Id.* ¶¶ 36-40. The Headmaster allegedly determined that the program was not related to the subject Plaintiff taught at Gonzaga, and also cited concerns about the program's cost and Plaintiff's ability to successfully complete it. *Id.* ¶¶ 39-40. Plaintiff attended and completed the program regardless, without reimbursement. *Id.* ¶ 41. According to Plaintiff, other teachers at Gonzaga received reimbursement for their own educational pursuits. *Id.* ¶ 43.

Plaintiff approached the Headmaster in early 2011 and requested that he be allowed to take leave to care for his sick wife. *Id.* ¶¶ 47-51. He also asserted that he was entitled to a one year sabbatical under Gonzaga's employee handbook. *Id.* ¶ 51. Both requests were denied. *Id.* ¶ 52. Plaintiff was told that if he took long term leave he would be terminated and would have to re-apply for his job. *Id.*

Plaintiff missed an hour of work on February 24, 2011. *Id.* ¶ 54. He alleges that he received permission to do so from "a colleague temporarily coordinating class coverage" while the Dean and Headmaster were travelling, but was nonetheless disciplined for his absence. *Id.* ¶¶ 54-57. At a meeting during which he was disciplined, Plaintiff alleges that the Headmaster "raised his voice and displayed furious anger," and stated "that he has his own set of rules for the Plaintiff." *Id.* ¶ 58. Plaintiff was given a probation letter for "dereliction of duty." *Id.* ¶ 59. Plaintiff claims that as he was leaving that meeting, the Headmaster stated that "if Plaintiff cannot attend school Plaintiff 'should be prepared to go back to the jungle.'" *Id.*

Later in 2011, Plaintiff went on FMLA leave to care for his wife. *Id.* ¶ 61. Upon returning, Plaintiff was allegedly instructed by the Headmaster "to notify him of all travel plans domestic and international." *Id.* ¶ 63.

3

In late 2012, Plaintiff informed the Headmaster that he was on the final extension of his H-1B visa and asked the Headmaster whether he would support Plaintiff in the process of obtaining a green card and sign Plaintiff's labor certification. *Id.* ¶ 68. The Headmaster allegedly gave an uncertain response and did not sign the certification. *Id.*

In 2013, Gonzaga's Headmaster again declined to reimburse Plaintiff for the cost of tuition for educational courses Plaintiff had been accepted to attend, again on the grounds that the program Plaintiff sought to attend fell outside the scope of Plaintiff's teaching assignment. *Id.* ¶ 71. The Headmaster also told Plaintiff in 2013 that he had decided not to sign Plaintiff's labor certification for his green card, and that he was not comfortable offering Plaintiff a permanent position at Gonzaga. *Id.* ¶ 73. On April 30, 2013, Defendant's Dean of Faculty informed Plaintiff that his employment would not be renewed for the next semester. *Id.* ¶ 78.

At a ceremony on June 2, 2013, outside the presence of other colleagues, the Headmaster allegedly expressed to Plaintiff that he was surprised and angry that Plaintiff was present, and also allegedly used a racial slur to refer to Plaintiff. *Id.* ¶ 74.

Plaintiff filed this lawsuit on June 2, 2017. Compl., ECF No. 1. In the operative Amended Complaint, Plaintiff asserts three claims under 42 U.S.C. § 1981: one for national origin discrimination (Count I), one for race discrimination (Count II), and one for retaliation (Count III). Am. Compl. ¶¶ 80-96.

Defendant has moved to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See generally* Def.'s Mot. Defendant argues that Plaintiff's claims are barred by the statute of limitations, that Plaintiff's national origin discrimination claim fails because Section 1981 does not apply to national origin discrimination, that Plaintiff failed to exhaust his administrative remedies, that Plaintiff has not alleged sufficient

4

facts to support his retaliation claim, and that Plaintiff is barred from bringing any discrimination claims against Defendant on First Amendment grounds because the "ministerial exception" applies. *Id.* Defendant's motion has been fully briefed and is now ripe for resolution.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

The Court will grant Defendant's Motion to Dismiss and dismiss all three of the claims in Plaintiff's Amended Complaint. Plaintiff consents to the dismissal of his retaliation claim, Plaintiff's national origin discrimination claim fails because Section 1981 does not prohibit discrimination based solely on an individual's national origin, and Plaintiff's race discrimination claim is barred by the statute of limitations.

1. **Plaintiff's Retaliation Claim (Count III)**

As an initial matter, Defendant argued in its Motion to Dismiss that Plaintiff failed to plead sufficient facts to support his claim for retaliation under 42 U.S.C. § 1981 (Count III). *See* Def.'s Mot. at 7-9. In his Opposition, Plaintiff conceded Defendant's Motion as it related to his

5

retaliation claim. Pl.'s Opp'n at 1. Accordingly, the Court will GRANT Defendant's Motion to Dismiss Plaintiff's retaliation claim under Section 1981 (Count III).

## 2. Plaintiff's National Origin Discrimination Claim (Count I)

Aside from his retaliation claim, Plaintiff asserts two other claims under Section 1981: one for national origin discrimination (Count I) and one for race discrimination (Count II). Defendant moves to dismiss Plaintiff's national origin discrimination claim because, Defendant argues, Section 1981 does not provide relief for national origin discrimination *per se*.[2]

Defendant is correct. The seminal case on this issue is *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604 (1987). In that case, the United States Supreme Court held that Section 1981 does not prohibit discrimination based "solely on the place or nation of [plaintiff's] origin." *Id.* at 613. Instead, the law prohibits racial discrimination, a concept which the Supreme Court held is broad enough to encompass discrimination on the basis of Plaintiff's "ancestry or ethnic characteristics." *Id.* Following this authority, courts in this District have repeatedly dismissed (or summarily adjudicated in defendant's favor) claims under Section 1981 premised solely on national origin discrimination. *See Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 272-75 (D.D.C. 2011) (dismissing Section 1981 claims because they were based on plaintiff's national origin); *Kalantar v. Lufthansa German Airlines*, 402 F. Supp. 2d 130, 138 (D.D.C. 2005) ("Kalantar has not brought forward any evidence that he was singled out for the extra search on the basis of such 'racial or ethnic characteristics' as opposed to his citizenship, so his § 1981

---

[2] Defendant's Motion to Dismiss includes arguments regarding why Plaintiff could not obtain relief under laws other than Section 1981 (including Title VII) because Plaintiff has not exhausted his administrative remedies as required by those laws. Def.'s Mot. at 5-7. The Court need not address these arguments because Plaintiff has made clear that he is not suing under any law other than Section 1981. Plaintiff states that "since [he] sued under § 1981, there is not a requirement that he exhaust all administrative remedies." Pl.'s Opp'n at 6.

6

claim must fail."); *Amiri v. Hilton Washington Hotel*, 360 F. Supp. 2d 38, 42 (D.D.C. 2003), *aff'd sub nom. Amiri v. Washington Hilton Hotel*, 173 F. App'x 1 (D.C. Cir. 2005) (dismissing Section 1981 claim because it was based on plaintiff's national origin); *Kidane v. Nw. Airlines, Inc.*, 41 F. Supp. 2d 12, 17 (D.D.C. 1999) ("plaintiff cannot base proof of discrimination under § 1981 solely on the place or nation of his origin"). Accordingly, while Plaintiff's race discrimination claim under Section 1981 (Count II) is theoretically actionable (although, as discussed below, it will be dismissed because it is time-barred), Plaintiff's claim of national origin discrimination (Count I) is improper.

Plaintiff argues that his Section 1981 claims are actionable because they are premised on allegations of discrimination on the basis of his being "non-white," and his membership in an "ethnically and physically distinctive group." Pl.'s Opp'n at 5-6. This argument does not save Plaintiff's national origin discrimination claim (Count I). Plaintiff has a separate claim in his Amended Complaint for race discrimination under Section 1981 (Count II), and the type of discrimination described by Plaintiff is properly viewed as part of that claim, not as a claim for "national origin discrimination." *See Saint Francis Coll.*, 481 U.S. at 613 (holding that the type of discrimination described by Plaintiff "is racial discrimination that Congress intended § 1981 to forbid"); *Kidane*, 41 F. Supp. 2d at 17 ("racial discrimination prohibited by § 1981 includes intentional discrimination based on 'ancestry or ethnic characteristics'"). Accordingly, the Court will GRANT Defendant's Motion to Dismiss Plaintiff's national origin discrimination claim under Section 1981 (Count I).

### 3. Plaintiff's Race Discrimination Claim (Count II)

Finally, Plaintiff's race discrimination claim under Section 1981 is barred by the statute of limitations. Although it is true that dismissal on statute of limitations grounds "is appropriate

7

only if the complaint on its face is conclusively time-barred," *Bregman v. Perles*, 747 F.3d 873, 875 (D.C. Cir. 2014) (internal quotation omitted), that is the case here. There is no dispute as to the dates relevant to Plaintiff's Section 1981 claim as pled. Plaintiff alleges that he was informed that his employment contract would not be renewed on April 30, 2013. Am. Compl. ¶ 78. Plaintiff's Section 1981 race discrimination claim accrued no later than that date. *See Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (for purposes of determining when statute of limitations begins to run, "the proper focus is on the time of the *discriminatory act*") (emphasis in original); *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (holding that the filing limitations period for a Section 1981 claim accrued "at the time the tenure decision was made and communicated to" plaintiff); *Wahi v. Charleston Area Med. Ctr.*, 453 F. Supp. 2d 942, 957-58 (S.D.W. Va. 2006), *aff'd sub nom. Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599 (4th Cir. 2009) ("Section 1981 claims for wrongful termination accrue on the date the employer notifies the employee that he is being terminated."). Assuming that a four year statute of limitations applies—and both parties appear to agree that it does, *see* Def.'s Mot. at 3; Pl.'s Opp'n at 6— Plaintiff was required to file suit before April 30, 2017.[3] He did not. This lawsuit was filed on June 2, 2017. Plaintiff's race discrimination claim (Count II) is therefore untimely and will be dismissed.

Plaintiff argues that the accrual date for the statute of limitations can be extended by an alleged occurrence in June 2013, when Gonzaga's Headmaster allegedly used a racial slur to refer to Plaintiff. The Court does not understand Plaintiff to argue that this incident would

---

[3] "[S]ome § 1981 claims will be subject to a three-year limitations period; others, a four-year limitations period." *Graves v. D.C.*, 777 F. Supp. 2d 109, 115 (D.D.C. 2011). The Court need not determine which type of claim Plaintiff asserts here, because Plaintiff's claim is untimely even under the longer four year period.

8

constitute an act of discrimination that *alone* is actionable under Section 1981. Instead, Plaintiff argues that the incident can be viewed as the latest occurrence in a pattern that, taken together, could constitute a hostile work environment.

This argument lacks merit because Plaintiff has not alleged a hostile work environment claim. *See generally* Am. Compl. There is absolutely no mention of such a claim in Plaintiff's Amended Complaint, and "plaintiff may not amend [his] complaint by the briefs in opposition to a motion to dismiss." *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 87 (D.D.C. 2010), *aff'd*, 424 F. App'x 10 (D.C. Cir. 2011); *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 168 (D.D.C. 2014) ("[s]uch allegations [attempting to reframe claims in order to avoid dismissal], included for the first time in an opposition to a motion to dismiss, cannot save those claims."). Plaintiff has not moved to amend his Complaint to add this claim under Federal Rule 15, even after Defendant indicated in its reply brief (filed over five months ago) that the absence of that claim rendered his statute of limitations argument meritless. The Court will not ignore the untimeliness of the claims Plaintiff actually did assert by pretending that Plaintiff asserted other hypothetical claims. Accordingly, the Court will GRANT Defendant's Motion to Dismiss Plaintiff's race discrimination claim under 42 U.S.C. § 1981 (Count II).[4]

---

[4] The parties also dispute whether the "ministerial exception" to discrimination laws applies to Plaintiff, who describes himself as a teacher of ethics and philosophy at a Catholic school. Given that the Court will dismiss Plaintiff's claims for the various threshold reasons described in this Memorandum Opinion, it has no occasion to reach the issue of whether the ministerial exception applies.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss and DISMISSES the retaliation, national origin discrimination, and race discrimination claims in Plaintiff's Amended Complaint. An appropriate Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge